Alexander S. LeFevre, and Zoa E. LeFevre v. Commissioner.
Alexander S. LeFevre, & Zoa E. LeFevre v. Commissioner
Docket No. 13891.
United States Tax Court
1948 Tax Ct. Memo LEXIS 188; 7 T.C.M. (CCH) 291; T.C.M. (RIA) 48083; May 17, 1948
*188 Paul C. Weick, Esq., and Kenneth A. Mason, Esq., 1910 Tower Bldg., Akron, Ohio, for the petitioners. Wesley A. Dierberger, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves an income and victory tax deficiency of $2,599.50 for 1943 and an income tax deficiency of $2,121 for 1944. Except for a minor adjustment of a deduction claimed for medical expenses in 1943, which is not contested, the deficiencies for both years result from the inclusion in the income of Alexander S. LeFevre of $7,700 in 1943 and $6,300 in 1944 which he allegedly received as compensation from a partnership, Reimer & Bloomgren Machine Company. The term "petitioner" will be used hereinafter when referring to Alexander S. LeFevre, his wife, Zoa E. LeFevre, being a party to the proceeding only because she and the petitioner filed a joint return for 1943. Findings of Fact The petitioner is a resident of Cuyahoga Falls, Ohio, a suburb of Akron. He filed his returns for 1943 and 1944 with the collector of internal revenue for the 18th district of Ohio. Continuously, from October 22, 1922, to July 1, 1945, the petitioner was employed by Firestone *189 Tire and Rubber Company of Akron, Ohio. He received a salary from that company of $5,362.07 in 1943 and $6,150 in 1944. He served as assistant purchasing agent in the gun mount department of the Firestone Company at Akron in 1941 and until June 1942, when he was transferred to the "air wing" department, where he also served as purchasing agent. In both positions he had the responsibility of purchasing for the Firestone Company various types of equipment. The total of purchases by his department from Reimer and Bloomgren during the years 1943 and 1944 was not in excess of $35,000. The orders for such equipment were usually placed with local machine shops, one of which was a partnership, Reimer & Bloomgren Machine Company. It was owned equally by Charles L. Reimer and Carl R. Bloomgren, until the former's death in 1947. About 90 per cent of its business in 1943 and 1944 was on orders from the Firestone Company. The most of these orders were for brackets for Bofors guns. The partnership did a business of about $300,000 in 1943 and about $250,000 in 1944. Bloomgren was general manager of the business and did most of the buying, selling, estimating, and other "outside" work. Bloomgren *190 and the petitioner formed an acquaintance at the Firestone Company plant in about 1937 and later became good friends, going on fishing trips and other outings together. They saw each other frequently at their places of business. The petitioner often called at the partnership's office to leave bids and specifications for work to be done on the Firestone Company's orders. The petitioner's son, now twenty-one years of age and a student at Kent State University, Kent, Ohio, was employed by the partnership for a short time in the summer of 1944. In its income tax return filed for 1943 the partnership claimed a deduction for commissions paid in the amount of $9,050. The return did not show to whom the commissions were paid. No deduction for commissions was claimed in the 1944 partnership return. The respondent had an investigation made of the partnership's returns in 1944 and 1945 and as a result thereof the surviving partner, Carl R. Bloomgren, is under indictment for filing false and fraudulent returns in an action now pending in the United States District Court for the Northern District of Ohio. As a result of this investigation of the partnership returns and the statement made *191 by Bloomgren that the partnership had paid commissions to the petitioner in 1943 and 1944, the petitioner was discharged by the Firestone Company about July 1, 1945. He has not been regularly employed since that time. Since October 1947 he has been confined to his home with a heart ailment and has been under the care of a physician. At the respondent's request, a financial statement covering the years 1942, 1943, and 1944 was prepared and submitted to him by the petitioner on December 1, 1947. The statement lists assets consisting of a house and lot which the petitioner and his wife purchased as a residence about twenty-three years ago at a value, exclusive of a mortgage, of $7,000; furniture and fixtures, $700; a Plymouth automobile valued at $1,000; two cemetery lots valued at $65; cash on hand, $875; and several small insurance policies of an aggregate value of about $500. The petitioner and his family, consisting of his wife, a twenty-one year old son, and a daughter now married, have always maintained a modest scale of living. Petitioner's wife does all of her household work, including the family washing and ironing. The petitioner has never been employed by the partnership, *192 Reimer & Bloomgren Machine Company, and has never received any remuneration, commissions or income of any kind whatsoever from that firm. Opinion LEMIRE, Judge: The question presented for our consideration in this case is whether the respondent erred in determining that the petitioner received income from the partnership of Reimer & Bloomgren Machine Company in the amount of $7,700 in 1943 and $6,300 in 1944. The petitioner appeared before us as a witness on his own behalf and testified that he never had received payments of any kind from Reimer & Bloomgren Machine Company, or from either of the partners, during the taxable years involved. Both the petitioner and his wife testified that the family, consisting of petitioner, his wife, a twenty-one year old son, and a daughter now married, had always maintained a modest scale of living, petitioner's wife doing all of the household work, including the family washing and ironing. A financial statement showing that the financial circumstances of the petitioner were in keeping with his modest salary received from the Firestone Company was introduced in evidence. Petitioner also testified that during the taxable years 1943 and 1944 *193 he was the purchasing agent for the wings department only of Firestone Tire and Rubber Company, and as such had supervision and control of purchases by the company from Reimer & Bloomgren Machine Company of not to exceed $35,000 of supplies from that partnership. In our opinion this evidence is sufficient to overcome the presumptive correctness of respondent's determination. The only evidence offered by the respondent other than petitioner's returns for 1942, 1943 and 1944, was the testimony of Bloomgren, one of the partners in the firm of Reimer & Bloomgren Machine Company. He testified categorically that he and his partner agreed to pay and did pay the petitioner commissions on all their sales to the Firestone Company, and that these payments were made to the petitioner from time to time in cash with moneys drawn from the partnership account. He had no record to show these payments but claimed that such a record was once kept but was destroyed at the petitioner's request. These alleged payments to the petitioner were claimed as deductions in the partnership return for 1943. That is one of the returns investigated by the respondent and with respect to which Bloomgren is now under *194 federal indictment on a charge of fraud against the United States Government. We do not believe that Reimer and Bloomgren paid petitioner $14,000 for the procurement of business of not to exceed the gross amount of $35,000 during the taxable years 1943 and 1944. The establishment of the facts to which Bloomgren testified in this case might be necessary to his defense in his pending trial for fraud. Under the circumstances, we think that little or no weight should be given to Bloomgren's testimony. A prolonged discussion of the evidence such as we have before us would serve no useful purpose. We think the Commissioner erred in determining that petitioner received taxable income from the partnership of Reimer and Bloomgren during the taxable years 1943 and 1944, and his determination should be set aside to the extent that it includes in petitioner's income the disputed amounts alleged to have been received from the partnership. Decision will be entered under Rule 50.